907 F.2d 1138
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MID-ATLANTIC TOYOTA DISTRIBUTORS, INC., Plaintiff-Appellee,
v.
CHECKERED FLAG MOTOR CAR COMPANY, INC., Defendant-Appellant.
 No. 88-1608.
 United States Court of Appeals, Fourth Circuit.
 Argued May 11, 1989.
Decided May 9, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Richard B. Kellam, Senior District Judge. (CA-87-917-N)
 Morris H. Fine, John R. Lomax, Fine, Fine, Legum & Fine, Virginia Beach, Va., for appellant.
 Thomas Francis Farrell, II, McGuire, Woods, Battle & Boothe, McLean, Va., (Argued), for appellee; Haynie S. Trotter, McGuire, Woods, Battle & Boothe, McLean, Va., Robert M. Skelton, Webster, Chamberlain & Bean, Washington, D.C., on brief:
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL, Circuit Judge, CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The parties to this action seek a determination concerning the alleged existence and enforceability of a contract purporting to give Checkered Flag Motor Car Company, Inc. (Checkered Flag) a right of first refusal in the bidding for a new Toyota dealership franchise in Chesapeake, Norfolk or Virginia Beach, Virginia, granted by Mid-Atlantic Toyota Distributors, Inc. (MAT). MAT raises as defenses to the enforcement of the alleged right of first refusal the contentions that: (1) no contract existed creating a right of first refusal because Checkered Flag did not unqualifiedly accept the terms upon which MAT offered such a right; (2) even assuming Checkered Flag accepted MAT's offer, the agreement must fail for indefiniteness as to material terms; (3) Checkered Flag expressly waived the right of first refusal; (4) Checkered Flag is estopped by its actions from asserting any right of first refusal; (5) Checkered Flag exercised the right of first refusal by declining acceptance; and (6) the right of first refusal is void as violative of Virginia public policy and the Anti-Trust Act. The district court found that while a right of first refusal in favor of Checkered Flag is found in the plain language of the contract, it had waived that right. We affirm.
 
 I.
 
 2
 The facts, as presented by the district court, are not in dispute. Since 1970, there have been three Toyota dealerships in the South Hampton Roads area: Mace Motors, Inc. (Mace), Checkered Flag, and Tower Toyota. In the fall of 1975, Mace and MAT determined that a more viable location for the Mace dealership would be the Hilltop area of Virginia Beach, Virginia. Relocation plans were begun and MAT notified the Commissioner of the Division of Motor Vehicles of the Commonwealth of Virginia ("DMV") of the proposed move as required by Va.Code Sec. 46.1-530.
 
 
 3
 Upon learning of the proposed move, Checkered Flag protested to MAT and to Toyota Motor Sales USA, Inc. ("TMS"), the nationwide importer of Toyota vehicles from Japan, that its business would be damaged if the move went forward. At the same time, Checkered Flag also filed a protest of the relocation with the DMV as allowed under Va.Code Sec. 46.1-547.[1] As a result of Checkered Flag's protests, TMS disapproved the Mace relocation in December of 1975 and Checkered Flag withdrew its DMV protest. TMS reversed its decision eleven months later and approved the relocation of the Mace dealership from downtown Norfolk to the Hilltop location, whereupon Checkered Flag renewed its DMV protest. The matter was set for hearing in April 1977. In an effort to resolve the dispute before the DMV hearing, negotiations took place between Checkered Flag and Mace and between Checkered Flag and MAT. While sharing the same goal, these negotiations proceeded independently of each other.
 
 
 4
 Negotiations between Checkered Flag and Mace resulted in an agreement dated April 12, 1977, whereby Checkered Flag agreed to withdraw all opposition to the relocation of Mace from downtown Norfolk to the Hilltop section of Virginia Beach. In exchange, Mace promised not to oppose the grant of any new Toyota dealership to Checkered Flag in Norfolk, Portsmouth, Chesapeake and that portion of Virginia Beach located adjacent to South Military Highway, south of Indian River Road.[2] In a letter dated March 25, 1977, and addressed to counsel for Mace, Checkered Flag, through its counsel, sought to make the contract between Mace and Checkered Flag "contingent upon a satisfactory agreement being reached between Mid-Atlantic Toyota and Checkered Flag Motor Car Company, Inc. and/or Edward B. Snyder [whereby the latter?] will be granted first refusal rights to any new 'point' or dealership franchise rights in the Norfolk, Chesapeake or Virginia Beach area." However, the April 12, 1977, contract contains no reference to a contingency.
 
 
 5
 The outcome of the negotiations between Checkered Flag and MAT is a matter of contention. On or about March 30, 1977, Edward B. Snyder, the principal owner of Checkered Flag, had a telephone conversation with John E. Reilly, then Executive Vice-President of MAT, in an effort to resolve the Mace relocation dispute. Checkered Flag asserts that it was agreed that in return for Checkered Flag withdrawing its opposition to the Mace move, MAT would grant Checkered Flag a right of first refusal on any new Toyota dealership in Chesapeake, Norfolk or Virginia Beach. In an attempt to define or reduce to writing the March 30, 1977, telephone conference, counsel for Checkered Flag wrote to Reilly on March 31, 1977, stating:
 
 
 6
 Mr. Edward B. Snyder, of Checkered Flag Motor Car Company, Inc., has related to me your conversation with him on March 30, 1977.
 
 
 7
 As I understand your agreement with Checkered Flag Motor Car Company, Inc., is as follows:
 
 
 8
 A. That Checkered Flag Motor Car Company, Inc. will withdraw its objections to the Mace Motor Company, Inc. move, from 21st Street in Norfolk, Virginia, to the Hilltop area of Virginia Beach, Virginia.
 
 
 9
 B. Mid-Atlantic Toyota Distributors, Inc. will grant Edward B. Snyder and/or his assigns, the right of first refusal whenever any new dealership point opens in the Chesapeake, Virginia, Virginia Beach, Virginia or Norfolk, Virginia area; it being understood that the decision of the new point is solely that of Mid-Atlantic Toyota, without the participation of any dealer.
 
 
 10
 In response, Reilly wrote to said counsel on April 4, 1977, stating:
 
 
 11
 It is our understanding that Checkered Flag Motor Car Company, Inc. will withdraw its objections to the Mace Motor Company, Inc. move from 21st Street in Norfolk, Virginia to the Hilltop area of Virginia Beach, Virginia.
 
 
 12
 Mid-Atlantic Toyota Distributors, Inc. will grant Edward B. Snyder the right of first refusal when MAT approves additional dealership points in the Chesapeake, Virginia, Virginia Beach, Virginia, or Norfolk, Virginia areas. However, it is understood that Edward B. Snyder's right of first refusal is limited to only one of the above indicated areas. It is also understood that the decision of the new point is solely that of Mid-Atlantic Toyota, without the participation of any dealer.
 
 
 13
 Counsel responded to Reilly by letter dated April 11, 1977, stating:
 
 
 14
 Many thanks for your letter of April 4, 1977.
 
 
 15
 I have read it over and frankly feel that I understand the sense of your agreement with Edward B. Snyder, but am a bit confused about the second sentence of the second paragraph.
 
 
 16
 The sentence now reads as follows: "However, it is understood that Edward B. Snyder's right of first refusal is limited to only one of the above indicated areas." Might I suggest that it read as follows: "It being understood that Edward B. Snyder shall be granted the right of first refusal in each City mentioned above and, even though Edward B. Snyder shall reject the offer of a point in one City, the point in the other City shall be offered to Edward B. Snyder, but in no event shall more than one point be offered to Edward B. Snyder in one City."
 
 
 17
 If this carries out the sense of the agreement, please retype and forward your letter back to me, with a copy to Edward B. Snyder.
 
 
 18
 Checkered Flag argues that the parties reached an oral agreement during the telephone conversation between Reilly and Snyder. MAT counters with two arguments. First, MAT contends the scope of the right of first refusal (whether it was a one-time right or a continuing right) was never agreed upon. Second, MAT contends that even if the parties agreed to the scope of the right, the agreement must fail because the parties did not include in the agreement necessary and material terms such as the location of the new dealership, the size and configuration of the physical plant, the management and ownership structure and the required capital contribution. Finally, MAT asserts that even if a one-time right of first refusal existed, it was exercised by Checkered Flag.
 
 
 19
 The deposition testimony seems to support the contention that an agreement was reached to the effect Checkered Flag was to have a one-time first refusal. MAT, on the other hand, points to the exchange of correspondence set forth above (particularly counsel's letter of April 11, 1977) as evidence that negotiations concerning the scope of the right continued after the March 30th telephone conference. MAT argues that these negotiations were inconclusive and that Checkered Flag never unqualifiedly accepted its offer of a one-time right of first refusal.
 
 
 20
 When asked about his counsel's letter at his deposition, Snyder responded: "He (Fine) was just trying to get a clarification on [the agreement]. We had already acted on it at that point.... So, I mean, as far as I'm concerned the deal was done at that time, that point, and the lawyers could write all the letters they want back and forth." During his deposition, when Reilly was asked what his understanding of the agreement was at that time he responded: "My interpretation was that Checkered Flag had the right of first refusal but not a continuing right."
 
 II.
 
 21
 Checkered Flag now asserts that while the district court was correct in finding that an agreement was reached giving Checkered Flag a one-time right of first refusal, it erred in holding that Checkered Flag had waived that right. After a thorough review of the record, we believe the facts well support the finding of the district court that Checkered Flag here waived its right of first refusal and accordingly affirm based on that opinion. Mid-Atlantic Toyota Distributors, Inc. v. Checkered Flag Motor Car Company, Inc., C/a No. 87-917-N (E.D.Va. Nov. 4, 1988).
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Va.Code Sec. 46.1-547(d) makes it unlawful for any manufacturer or distributor:
 To grant an additional franchise for a particular line-make of motor vehicle in a trade area already served by a dealer or dealers in that line-make unless the franchisor has first advised in writing such other dealers in the line-make in the trade area. No such additional franchise may be established in the trade area unless the Commissioner has determined if requested by any party within thirty days after receipt of the franchisor's notice of intention to establish the additional franchise and after a hearing on the matter that there is reasonable evidence that after the grant of the new franchise, the market will support all of the dealerships in that line-make in the trade area. A reopening of a franchise in a trade area that has not been in operation for more than one year shall be deemed the establishment of a new franchise subject to the terms of this subdivision.
 
 
 [2]
 Actually, the agreement only prevented Mace from objecting to the grant of a new Toyota dealership to Checkered Flag or Edward Snyder occurring 2 1/2 years after the contract date of April 12, 1977. The agreement would have allowed Mace to object to such a grant before the expiration of 2 1/2 years